# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

PAUL ANTHONY WARTAK,       )
     Plaintiff,           )
                         )
     v.                   )     CAUSE NO.: 2:14-CV-401-PRC
                         )
CAROLYN W. COLVIN,         )
Acting Commissioner of the     )
Social Security Administration,   )
     Defendant.          )

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Paul Anthony Wartak on November 4, 2014, and a Brief in Support of Plaintiff's Motion for Summary Judgment [DE 17], filed on March 13, 2015. Plaintiff requests that the September 13, 2014 decision of the Administrative Law Judge denying his claim for disability insurance benefits and supplemental security income be reversed and remanded for further proceedings. On May 26, 2015, the Commissioner filed a response, and Plaintiff filed a reply on June 9, 2015. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

Plaintiff filed applications for disability insurance benefits and supplemental security income on November 10, 2011, alleging an onset date of January 1, 2010. His initial claim was denied on December 20, 2011, and upon reconsideration on May 30, 2012. Plaintiff timely requested a hearing, which was held on August 9, 2013. In attendance at the hearing were Plaintiff and an impartial vocational expert. Plaintiff was not represented by counsel. On September 13, 2013, Administrative Law Judge ("ALJ") Harry Kramzyk issued a written decision denying benefits, making the following findings:

    1.      The claimant meets the insured status requirements of the Social Security Act through September 30, 2014.

2.      The claimant has not engaged in substantial gainful activity since January 1,
        2010, the alleged onset date.

3.      The claimant has the following severe impairments: blindness of the left eye;
        hypertension; diabetes mellitus; obesity; depression; and schizoid personality
        disorder.

4.      The claimant does not have an impairment or combination of impairments
        that meets or medically equals one of the listed impairments in 20 CFR Part
        404, Subpart P, Appendix 1.

5.      After careful consideration of the entire record, the undersigned finds that the
        claimant has the residual functional capacity to perform light work as defined
        in 20 CFR 404.1567(b) and 416.967(b) in that the claimant can lift and/or
        carry up to twenty (20) pounds occasionally and up to ten (10) pounds
        frequently, can stand and/or walk for about six (6) hours and can sit for about
        six (6) hours during an eight-hour workday, except: the claimant can
        occasionally balance, stoop, kneel, crouch, or crawl, but he must never climb
        ladders, ropes, or scaffolds; the claimant is limited to work that allows for
        monocular vision with the right eye; the claimant requires an occupation with
        only occasional co-worker contact and supervision; the claimant requires an
        occupation with only superficial contact with the public on routine matters;
        and the claimant must avoid concentrated exposure to hazards such as
        unprotected heights and dangerous machinery.

6.      The claimant is capable of performing past relevant work as a lab clerk [DOT
        #222.587-026]. This work does not require the performance of work-related
        activities precluded by the claimant's residual functional capacity.

7.      The claimant has not been under a disability, as defined in the Social Security
        Act, from November 30, 2009, through the date of this decision.

(AR 12-22).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the
final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil
action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate
Judge to conduct all further proceedings and to order the entry of a final judgment in this case.

Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v.*

*Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant

numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff seeks reversal and remand for further proceedings, arguing that (1) Plaintiff's waiver of his right to counsel at the administrative hearing was not valid; (2) the RFC is not supported by substantial evidence; (3) the ALJ erred in the credibility determination; and (4) the ALJ erred in not calling a medical expert to supplement the record. The Court considers each in turn.

### A. Attorney Representation

A claimant has a right to counsel at an administrative hearing on disability benefits. *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991) (citing 42 U.S.C. § 406; 20 C.F.R. § 404.1700). To secure a valid waiver of counsel, an ALJ must explain to an unrepresented claimant: (1) the manner in which an attorney can aid in the proceedings; (2) the possibility of free counsel or a contingency arrangement; and (3) the limitation of attorney fees to 25% of past due benefits and required court approval of the fees. *Id.* at 584-85; *see also Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994). If the claimant's waiver of counsel is invalid, the burden of proof shifts to the Commissioner to show that the ALJ adequately developed the record. *Binion*, 13 F.3d at 245.

At the first scheduled hearing on May 20, 2013, Plaintiff did not have an attorney, and the hearing was continued in order to allow Plaintiff time to obtain counsel. There is no transcript of that hearing in the record. Prior to that first hearing, Plaintiff was mailed a document titled "Your Right to Representation" with the Notice of Hearing. (AR 106-07). The document explains how an attorney can assist Plaintiff, how Plaintiff can receive free counsel, and the limit on attorney fees, including the cap of 25% of past due benefits.

The hearing was reset for August 9, 2013, and Plaintiff was again mailed a copy of the document "Your Right to Representation" with the Notice of Hearing. (AR 124-25). At the hearing on August 9, 2013, the ALJ noted the continuation of the prior hearing to allow Plaintiff to obtain

counsel and confirmed with Plaintiff that he was again unrepresented. The ALJ then asked, "[D]o you remember your rights to representation?" and "Do you want to proceed now today?" to both of which Plaintiff answered in the affirmative. (AR 32). The ALJ then asked, "Do you waive your–you want to proceed with [sic] an attorney or a non-attorney. Is that correct?" to which Plaintiff answered "yes." *Id.* Finally, the ALJ asked, "Do you waive your right to have a representative with you at this hearing . . . ?" to which Plaintiff answered "yes." *Id.*

After the questioning, the ALJ gave Plaintiff time to read and sign a "Waiver of Representation," encouraging Plaintiff to ask any questions. The Waiver of Representation acknowledges that Plaintiff received a referral list of legal service providers and that Plaintiff understands the manner in which an attorney can aid in the proceedings. The Waiver of Representation does not explain the possibility of free counsel or the 25% contingency fee structure. *See* (AR 134). Plaintiff explained to the ALJ that he did not have representation because no attorney would take his case and that was the reason he was waiving his right to an attorney.

The Seventh Circuit Court of Appeals has not directly addressed whether a claimant's receipt of written materials setting forth the information required by *Thompson* can replace the oral admonishment. *See Davis ex rel. J.E.C. v. Colvin*, No. 14-C-104, 2014 WL 4954470, at *7 (E.D. Wis. Oct. 2, 2014); *Gatewood ex rel. D.P. v. Astrue*, NO. 10 C 283, 2011 WL 904864, at *9 (N.D. Ill. Mar. 14, 2011). Some district courts within the Seventh Circuit Court of Appeals have found that written waivers are sufficient. *See Abdul Rahim N. Al-Ramadi v. Colvin*, 1:14-CV-327, 2015 WL 7761617, at *5 (N.D. Ind. Dec. 2, 2015) (finding that the "Your Right to Representation" notice as well as the waiver communicated the necessary information); *Delong v. Barnhart*, No. 00-222, 2001 WL 34379614, at *2 (W.D. Wis. Dec. 12, 2001) (holding that "Your Right to Representation" mailing appeared to provide claimant's mother "all the information she should have had when she

made her decision to waive her right to representation at the hearing"). Other courts have found that a written waiver was sufficient when the ALJ "establish[ed] at the hearing that the claimant received, read and understood the notices." *Seamon v. Barnhart*, 05 C 13 C, 2005 WL 1801406, at *10 (W.D. Wis. July 29, 2005); *see also Moore v. Astrue*, 851 F. Supp. 2d 1131, 1141 (N.D. Ill. 2012). And yet another court found the pre-hearing letter did not relieve the ALJ of the obligation to properly notify the claimant of the right to counsel at the hearing. *Dillard v. Barnhart*, No. 02C6251, 2003 WL 22478775, at *2 (N.D. Ind. Oct. 31, 2003).

Under the facts of this case, it appears that Plaintiff received and understood the information required by *Thompson* notwithstanding the ALJ's failure to provide the oral notification at the hearing. Both of the two-page "Your Right to Representation" notices included all of the requisite information in great detail. In addition, Plaintiff signed a waiver that included the statement that he has a right to representation and an explanation of the benefits of counsel. Plaintiff testified that he understood his rights and waived them. Finally, Plaintiff explained to the ALJ at the hearing that the reason he was willing to waive counsel was because he had tried to get counsel but that no one would not take the case on the merits. (AR 33); *compare Thompson*, at 585 (finding that the plaintiff's agreement to proceed without counsel after unsuccessfully attempting to obtain counsel was because the plaintiff believed that he would have to furnish money to get counsel).

However, the Court need not decide whether *Thompson* allows an ALJ to discharge his obligations through pre-hearing notices and waivers because, as set forth below, this matter is being remanded on other grounds. On remand, should another hearing be held, the ALJ is directed to explain orally to Plaintiff the manner in which an attorney can aid in the proceedings; the possibility of free counsel or a contingency arrangement; and the limitation of attorney fees to 25% of past due benefits and required court approval of the fees.

## B. Residual Functional Capacity

The RFC is a measure of what an individual can do despite the limitations imposed by his impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*.

Plaintiff offers several challenges to the ALJ's RFC determination. The Court considers them in turn.

### 1. *Contact with Supervisors and Coworkers*

First, Plaintiff argues that the ALJ erred by not including in the RFC moderate limitations in handling instruction and criticism from supervisors, getting along with co-workers or peers

without distracting them or exhibiting behavioral extremes, maintaining socially appropriate behavior, and adhering to basic standards of neatness and cleanliness. Both state agency reviewing physicians, Ann Lovko, Ph.D., and Kari Kennedy, Psy.D., to whose opinions the ALJ gave great weight, found these moderate limitations. (AR 320, 337). On December 16, 2011, Dr. Lovko completed a Mental Residual Functional Capacity Assessment Form and checked the boxes for each of these moderate limitations in the "Summary Conclusions" (Section I) of the form under the heading for "Social Interaction." (AR 320). Then, in the ""Functional Capacity Assessment" (Section III), Dr. Lovko typed out the narrative functional capacity assessment in which she opined that Plaintiff "can relate on at least a superficial basis on an ongoing basis with co-workers and supervisors." (AR 321). Dr. Lovko also checked the box for moderate limitations in social functioning on the Psychiatric Review Technique form, with a reference to the mental RFC assessment for further explanation. (AR 333, 335). Dr. Kennedy then affirmed these findings on May 23, 2012.

The RFC provides for "only occasional co-worker contact and supervision," (AR 15), and does not include any of the specific moderate limitations opined by Dr. Lovko and Dr. Kennedy in Section I of the form. In his analysis, the ALJ does not explain why these moderate limitations were not included in the RFC, nor does he discuss them. Plaintiff argues that this is error. The Commissioner responds that the ALJ was not required to do so because the moderate limitations are contained in Section I of the form and the Agency's Program Operational Manual System, POMS DI 24510.060, explains that Section I of the form is a worksheet and "does not constitute the RFC assessment." https://secure.ssa.gov/poms.nsf/lnx/0424510060 (last visited Mar. 7, 2016). Rather, the POMS directs that the "Functional Capacity Assessment" (Section III) is where a medical consultant records what a claimant can still do despite his or her impairments. *Id*. Thus, it appears

that the ALJ complied with the Social Security Administration's own rules and regulations in relation to his treatment of the Mental Residual Functional Capacity Assessment form completed by Dr. Lovko and affirmed by Dr. Kennedy. *See Pingel v. Colvin*, No. 14C1476, 2016 WL 235936, at *9-10, — F. Supp. 3d — , — (E.D. Wis. Jan. 20, 2016) (finding that the ALJ followed POMS DI 24510.060 by following the functional capacity assessment in Section III rather than the limitations identified in Section I, but ultimately reversing based on Seventh Circuit Court of Appeals precedent that moderate limitations in Section I must be explicitly considered).

Nevertheless, the Seventh Circuit Court of Appeals has rejected the argument that the ALJ may ignore the moderate limitations a state consulting psychologist checks in Section I of the form, explaining that the Section I moderate limitations are medical evidence that cannot be ignored and must be considered by the ALJ and incorporated in hypotheticals to the vocational expert. *See Varga v. Colvin*, 794 F.3d 809, 815-16 (7th Cir. 2015); *Yurt v. Colvin*, 758 F.3d 850, 857-58 (7th Cir. 2014). In *Yurt*, the court distinguishes *Johansen v. Barnhart*, 314 F.3d 283 (7th Cir. 2002), in which a hypothetical was allowed to stand because the Section III residual functional assessment fully accommodated the Section I moderate limitations. *Yurt*, 758 F.3d at 858; *see also Capman v. Colvin*, 617 F. App'x 575, 579 (7th Cir. 2015) (rejecting a claim that the failure to include moderate limitations from Section I was an error because "the ALJ may reasonably rely on the examiner's narrative in Section III, at least where it is not inconsistent with the findings in the Section I worksheet").

In *Pingel*, the district court explores the development of this line of cases and raises concerns over the conflict between the Agency's internal rule that Section I is only a worksheet and the expectation of the Seventh Circuit Court of Appeals that moderate limitations from Section I be considered by the ALJ. 2016 WL 235936, at *9 (recognizing the holdings in *Varga* and *Yurt* but

questioning their viability in light of the agency's own rules and unpublished rulings of the Sixth, Ninth, and Eleventh Circuits). The court goes so far as to suggest that the Commissioner may wish to seek further clarification before the Court of Appeals. *Id*.

Like the court in *Pingel*, given the mandatory authority of *Yurt* and *Varga*, this Court finds that the ALJ erred in failing to include in the RFC discussion, and possibly the RFC itself, Plaintiff's moderate limitations in the areas of social interactions checked in Section I of the form. However, also like in *Pingel*, it appears that Dr. Lovko may have thought that explaining in Section III that Plaintiff "can relate on at least a superficial basis on an ongoing basis with co-workers and supervisors," (AR 321), sufficiently accommodated the Section I moderate limitations in handling instruction and criticism from supervisors, getting along with co-workers or peers without distracting them or exhibiting behavioral extremes, maintaining socially appropriate behavior, and adhering to basic standards of neatness and cleanliness in the RFC. Although, Dr. Lovko's Section III assessment most clearly accommodates the first two as opposed to the latter two. Regardless, because the ALJ did not discuss the moderate limitations from Section I in formulating the RFC, the Court cannot determine if the ALJ considered whether all four of the moderate limitations were accommodated in Dr. Lovko's Step III assessment. Remand is thus required on this issue.

More importantly, however, and the primary basis for reversal and remand by this Court, is that there is no analysis of how the limitation in the RFC to "occasional" contact with coworkers and supervisors accommodates Dr. Lovko's limitation in the narrative assessment in Section III to "superficial contact." "Occasional contact" goes to the quantity of time spent with the individuals, whereas "superficial contact" goes to the quality of the interactions. In this sense, the checked boxes for moderate limitations in Section I are consistent with Dr. Lovko's assessment of superficial contact because all go to the quality of the contact, namely handling instruction and criticism from

supervisors, getting along with co-workers or peers without distracting them or exhibiting behavioral extremes, maintaining socially appropriate behavior, and adhering to basic standards of neatness and cleanliness. It is also curious that the ALJ limited Plaintiff to "occasional" contact with coworkers and supervisors when Dr. Lovko opined that Plaintiff could engage in "superficial contact" on an "ongoing basis." Perhaps the ALJ determined that a shift in the frequency of contact would compensate for the depth of contact; but the ALJ does not say so, and there is no support for such a finding in the record. The error is further compounded because the hypotheticals to the vocational expert did not include any limitations on the quality or extent of the contact. In other words, the ALJ did not ask the vocational expert what the impact of a limitation to "superficial contact" with a supervisor would be on available jobs.

Nor does Dr. Lovko's opinion that Plaintiff could handle "at least" superficial contact change the analysis, as suggested by the Commissioner. When read in context, the use of "at least" does not seem to suggest that Dr. Lovko was opining that Plaintiff has the minimum ability to relate on superficial contact but could also relate on a deeper basis. Rather, the use of the expression suggests the opposite—that Plaintiff should not be precluded from all contact but could interact on a superficial level. Nowhere does Dr. Lovko opine that Plaintiff could relate on more than a superficial level with coworkers and supervisors. This is especially true in light of the moderate limitations in Section I. In any event, the ALJ did not address the meaning of "at least" proffered by the Commissioner and, thus, cannot be a basis for reviewing the ALJ's decision. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).

Accordingly, the ALJ did not build a logical bridge between the evidence and the RFC, and remand is required. *See also Gidley v. Colvin*, No. 2:12-CV-374, 2013 WL 6909170, at *12 (N.D. Ind. Dec. 30, 2013) ("Here, [the ALJ] made no attempt to explain the basis for his decision to limit

Gidley to occasional interaction rather than superficial interaction, nor is it apparent from the record. The medical opinion to which he assigned great weight included a more restrictive limitation on Gidley's social interaction.").

2. *Substantial Evidence*

Plaintiff also argues that the RFC is not supported by substantial evidence. First, Plaintiff argues that the ALJ failed to base the physical RFC for light work with additional nonexertional limitations on the evidence of record. Plaintiff reasons that, once the ALJ rejected the opinion of Dr. Neal, who was the only physician to provide a physical RFC, the remaining medical evidence was insufficient to support the ALJ's determination. While Dr. Neal imposed nonexertional limitations on climbing ladders, ropes, or scaffolds and avoiding concentrated hazards due to Plaintiff's complaints of dizziness, he did not impose any exertional limitations. As a result, the ALJ rejected Dr. Neal's opinion as not sufficiently restrictive, explaining that the "evidence at the hearing level shows [Plaintiff] is more limited than determined" by Dr. Neal and Dr. Sands. (AR 19). Neither of the consultative examiners—Dr. Odeluga and Dr. Smejkal—nor treating doctor Dr. Spotwood assessed any physical limitations. Thus, Plaintiff contends that, once the ALJ eliminated Dr. Neal's opinion, the only evidence of physical limitations in the record was Plaintiff's own testimony that he can stand ten to fifteen minutes at a time before needing to sit and is able to lift a gallon of milk, all of which would support limitations greater than allowed for by light work. (AR 49).

A doctor's opinion regarding what a claimant can do is distinct from an ALJ's responsibility to assess a claimant's RFC. 20 C.F.R. §§ 404.1513(b), (c), 404.1545, 404.1546(c), 416.913(b), (c), 416.945, 416.946(c); SSR 96-5p, 1996 WL 374183, at *4 (July 2, 1996) ("Even though the adjudicator's RFC assessment may adopt the opinions in a medical source statement, they are not the same thing). However, the ALJ must explain the basis for the limitations in the RFC, and the

ALJ did not do so for Plaintiff's physical limitations. In his RFC analysis, the ALJ proceeded through each category of evidence for each of Plaintiff's alleged impairments. The ALJ began with the objective evidence and medical records relating to Plaintiff's eye impairment, high blood pressure, diabetes, and obesity, noting generally the lack of evidence to support a finding of disability. Next, the ALJ discussed the opinion evidence, including the rejection of Dr. Neal's finding of no exertional limitations. The ALJ then discussed and rejected the opinion of Plaintiff's father.

However, nowhere in the summary of the medical evidence did the ALJ explain *how* the evidence, or the lack thereof, supports only limitations to light work and not greater limitations consistent with Plaintiff's testimony. *See* SSR 96-8p, at *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."). Nor did the ALJ directly discuss the examination findings from the November 5, 2010 consultative examination by Kanayo K. Odeluga, M.D., or the November 28, 2011 consultative physical exam by J. Smejkal, M.D. Although neither doctor completed a physical residual functional capacity form, each detailed his clinical findings, all of which were relatively normal, with the exception of dizziness noted by Dr. Smejkal. *See* (AR 290-93) (Dr. Odeluga); (AR 296-300) (Dr. Smejkal). The absence of abnormal physical findings in these reports appears to support the ALJ's RFC, but the ALJ did not say so. Thus, while there appears to be substantial evidence in the record to support the RFC, the ALJ did not create a logical bridge between the evidence and his decision. On remand, the ALJ is directed to provide the requisite findings for the RFC assessment.

Next, Plaintiff contends that the ALJ was selective in discussing the psychiatric evidence by focusing on favorable findings and ignoring notations regarding inadequate hygiene, pressure of

speech, and a tendency to go into detail by Raymond Bucur, Ph.D. and lack of eye contact, poor

hygiene, and slow response to questioning by Irena Walters, Psy.D. (AR 303-05) (Dr. Bucur); (AR

286-87) (Dr. Walters). However, it is not necessary for the ALJ to discuss every piece of evidence

such as whether Plaintiff had good eye contact or hygiene on a particular day. *Simila v. Astrue*, 573

F.3d 503, 516 (7th Cir. 2009) ("[T]he ALJ is not required to discuss every piece of evidence but is

instead required to build a logical bridge from the evidence to her conclusions."). The ALJ

thoroughly discussed both opinions and explained how each supported the mental RFC

determination. Notably, the ALJ gave great weight to the opinions of state agency psychologists Drs.

Lovko and Kennedy, which is undisputed by Plaintiff, and incorporated their limitations into the

RFC.

Third, Plaintiff argues that the ALJ did not analyze how obesity affects Plaintiff's ability to

work, other than to say that he considered "the exacerbatory impact" of Plaintiff's obesity on the

other impairments in formulating the RFC. (AR 18). Under Social Security Ruling 02-1p, an ALJ

must specifically address the effect of obesity on a claimant's limitations. *See* SSR 02-1p, 2002 WL

34686281, at \*2 (Sept. 12, 2002). The consideration of obesity should be an integral factor

underlying the construction of the RFC. *Id*. at \*6. The ALJ must consider whether obesity causes

any functional limitations and explain that conclusion: "As with any other impairment, we will

explain how we reached our conclusions on whether obesity caused any physical or mental

limitations." *Id*. at \*6-7. The Ruling provides some guidance on how obesity is factored into the
RFC determination:

> Obesity can cause limitation of function. The functions likely to be limited depend
> on many factors, including where the excess weight is carried. An individual may
> have limitations in any of the exertional functions such as sitting, standing, walking,
> lifting, carrying, pushing, and pulling. It may also affect ability to do postural
> functions, such as climbing, balance, stooping, and crouching. The ability to
> manipulate may be affected by the presence of adipose (fatty) tissue in the hands and

fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.

The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day. Obesity may also affect an individual's social functioning.

*Id*. at *6.

Although the ALJ noted Plaintiff's Body Mass Index of 37, which is considered "obese" under the guidelines, he did not provide any specific analysis of how Plaintiff's obesity impacts the RFC. Again, perhaps Plaintiff's obesity was a factor the ALJ relied upon in limiting Plaintiff to light work but not more than light work; yet, the ALJ did not say so or how he made that determination. The ALJ did not provide the requisite discussion. *See* SSR 96-8p, at *7; SSR 02-1p; *Briscoe*, 425 F.3d at 352; *Milad v. Colvin*, No.14 CV 4627, 2016 WL 374138, at *6 (N.D. Ill. Feb. 1, 2016) (citing *Schmidt*, 395 F.3d at 744).

Fourth, Plaintiff argues that the ALJ erred in not considering his headaches and dizziness. On November 5, 2010, Dr. Odeluga noted Plaintiff's complaint of headaches. (AR 291). On November 28, 2011, Dr. Smejkal noted Plaintiff's report that he "suffers with dizziness and feels like he is going to fall over. During the exam he was seen catching himself on the wall." (AR 296). On January 22, 2013, Plaintiff's treating physician, Bayne Spotwood, M.D., noted Plaintiff's complaints of "sinus headache and dizziness." (AR 349). In the physical RFC, dated December 5, 2011, Dr. Neal gave a primary diagnosis of left eye blindness and a secondary diagnosis of "hypertension/dizziness/headaches." (AR 311). As a result, Dr. Neal limited Plaintiff to never climbing ladders, ropes, or scaffolds, (AR 313), and to avoiding concentrated exposure to noise and hazards such as machinery and heights because of his dizziness. (AR 315).

In his decision, the ALJ noted that at an initial exam on January 15, 2013, Plaintiff denied seizures or neurological problems suggestive of end-organ damage as well as the report from Dr.

Spotwood of sinus headaches and dizziness. (AR 17). However, the ALJ did not question Plaintiff about his headaches at the hearing and did not discuss Dr. Smejkal's report. While the ALJ's discussion of these symptoms could have been more complete, the ALJ nevertheless incorporated in the RFC the limitations imposed by Dr. Neal as a result of the dizziness, namely never climbing ladders, ropes, or scaffolds and avoiding concentrated exposure to hazards such as unprotected heights and dangerous machinery. Notably, Plaintiff did not pursue this argument in his reply brief. The ALJ did not err in his treatment of these symptoms. However, on remand, the ALJ will have an opportunity to be more thorough in his discussion of both headaches and dizziness.

Finally, Plaintiff objects, without discussion, that the ALJ did not consider his impairments in combination. Plaintiff does not suggest how his impairments in combination would create greater limitations than individually. Nevertheless, the ALJ is required to explain how he considered the claimant's impairments in combination, and the ALJ did not explicitly do so here. *See Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014); *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) ("[W]e have frequently reminded the agency that an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation."); *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) ("The ALJ's cursory analysis does not give us confidence that he had appropriate reasons for rejecting the limitations Villano alleged," in part because the ALJ did not analyze the claimant's impairments in combination). This, too, can be remedied on remand.

### C. Credibility Determination

In making a disability determination, the ALJ must consider a claimant's statements about his symptoms, such as pain, and how the symptoms affect his daily life and ability to work. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). Subjective allegations of disabling symptoms alone cannot

support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1)    The individual's daily activities;
(2)    Location, duration, frequency, and intensity of pain or other symptoms;
(3)    Precipitating and aggravating factors;
(4)    Type, dosage, effectiveness, and side effects of any medication;
(5)    Treatment, other than medication, for relief of pain or other symptoms;
(6)    Other measures taken to relieve pain or other symptoms;
(7)    Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). "Because the ALJ is 'in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504-05 (7th Cir. 2004)); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry*, 580 F.3d at 477); SSR 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

First, Plaintiff argues that the ALJ failed to mention the statements of state agency examiners Dr. Walters and Dr. Neal regarding Plaintiff's credibility. Dr. Walters wrote that Plaintiff "appeared to be a reliable self-informant." (AR 286). Dr. Neal found Plaintiff credible. (AR 316). When a state agency medical consultant provides a finding regarding "the credibility of the individual's statements about limitations or restrictions due to symptoms," the ALJ is required to "consider and weigh this opinion" and "must explain the weight given to the opinion in the decision." SSR 96-7p,

at *8; 20 C.F.R. §§ 404.1527(f), 416.927(f); *Strysik v. Colvin*, No. 13 CV 7723, 2015 WL 8481953, at *6 (N.D. Ill. Dec. 10, 2015). Although this omission alone does not render the credibility decision patently wrong, on remand, the ALJ will have an opportunity to explain the weight given to these credibility findings.

Plaintiff also argues that the ALJ ignored evidence of his good work record. *See* SSR 96-7p, at *5. The Seventh Circuit Court of Appeals has recently held that an "ALJ is not statutorily required to consider a claimant's work history, but a claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Stark v. Colvin*, No. 15-2352, 2016 WL 698255, at *4, — F.3d —, — (7th Cir. Feb. 22, 2016) (internal quotation marks omitted) (quoting *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015) (internal citations omitted)). In this case, the ALJ explicitly considered Plaintiff's work history in noting that Plaintiff was able to work for many years at substantial gainful activity despite his vision and psychological symptoms; however, the ALJ did not discuss work history in the context of credibility. Again, while this omission in the context of the overall credibility determination does not itself require remand, because the case is being remanded on other grounds, the ALJ will have an opportunity to discuss work history in assessing Plaintiff's credibility.

### D. Medical Expert

In his opening brief, Plaintiff argues that the ALJ erred by not calling a medical expert to supplement the limited medical record because of what Plaintiff characterizes as "new, potentially decisive medical evidence." (Pl. Br. 20). Plaintiff notes that he began treatment in 2013, which was after the consultative examinations of record. He also criticizes the ALJ for finding that new mental health records did not show significant clinical findings because the ALJ did not explain what he meant by "significant clinical findings." (AR 18-19). However, Plaintiff does not distinguish the

new treatment findings from the prior consultative examinations to show how they provide information not already known from the existing consultative examinations.

Plaintiff comments that the ALJ noted Dr. Spotwood's description of Plaintiff's diabetes as uncontrolled with complications but then criticizes the ALJ for not further describing the condition or its effects on Plaintiff; if the doctor opined that there are no complications from the diabetes, it is unclear what further description or analysis the ALJ could provide. Plaintiff also takes issue with the ALJ's characterization of Plaintiff's hypertension as "benign" when Dr. Spotwood described it as both benign (AR 348) and malignant (AR 340-41). Yet Plaintiff does not identify any records showing limitations stemming from his hypertension.

The ALJ had four consultative opinions before him for consideration. Plaintiff has not distinguished any of the new medical evidence from the evidence considered in the four opinions that would require a fifth medical expert opinion. Therefore, the ALJ did not abuse his discretion by not calling another medical expert.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in the Brief in Support of Plaintiff's Motion for Summary Judgment [DE 17], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

So ORDERED this 8th day of March, 2016.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT